1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    Jaimi O'Brien and Sean O'Brien,              No. 2:20-cv-02115-KJM-AC

12                        Plaintiffs,              ORDER

13         v.

14    HII Insurance Solutions, et al.,

15                        Defendants.

16

17         Plaintiffs Jaimi and Sean O'Brien brought this action in state court against several health

18    insurers, administrators, agents and brokers.[1]  Defendants removed the action to this court based

19    on the parties' diversity of citizenship.  Now plaintiffs move to remand, and each defendant

20    moves to dismiss.  For the reasons below, the court **denies** the motion to remand and **grants** the

21    motions to dismiss.

---

[1] The defendants named in the operative First Amended Complaint are (1) HII Insurance
Solutions; (2) Health Plan Intermediaries Holdings, LLC ("HPIH"); (3) Benefytt Technologies,
Inc., formerly known as Health Insurance Innovations, Inc.; (4) Axis Insurance Company; and
(5) ten unnamed Doe defendants.  *See* First Am. Compl. ("FAC") ¶¶ 2–6, ECF No. 1-6.

     According to HPIH, HII Insurance Solutions is not a business entity, but rather the name
under which HPIH does business.  *See* Not. Removal ¶ 6, ECF No. 1.  Plaintiffs do not dispute
that characterization.  The court therefore considers the claims against HPIH and HII Insurance
Solutions jointly in this order.

     Plaintiffs refer to all of the defendants except Axis as the "HII Defendants."  *See id.* ¶ 13.
This order adopts that shorthand.

1   **I.    BACKGROUND**

2         On some unspecified date in 2017, plaintiffs purchased health insurance from "an

3   unlicensed agent/broker named Julio [who] was working for the HII Defendants."  First Am.

4   Compl. ("FAC") ¶ 16; ECF No. 1-6.  Julio did not have a license to sell insurance in California,

5   but plaintiffs did not know this.  *Id.*  They claim that during the sales process, defendants—that is,

6   all of the many entities described in footnote 1 above—"made specific representations to

7   plaintiffs about the nature and scope of coverage that they would receive."  *Id.*  They also allege

8   Julio told them that "co-pays would be $10 for regular doctors and $30 for specialists; that 90%

9   of all doctors in the nation were in network; that all out-of-network care was covered at 50%, that

10  all hospital care was covered at 70%."  *Id*. ¶ 61.  Plaintiffs "accept[ed] the offer and paid the

11  premium."  *Id*. ¶ 16.

12        After plaintiffs purchased the policy, Jaimi O'Brien required medical care.  *Id.* ¶ 16.  The

13  complaint does not allege how much this care cost, but in later filings, plaintiffs claim the amount

14  of their charges was about $58,000.  *See* Mot. Remand at 2, 7, ECF No. 10-1.  Plaintiffs allege

15  that when they submitted an insurance claim to defendants for these charges, they learned the

16  insurance policy did not cover any of the medical bills.  FAC ¶ 16.  Plaintiffs also claim the HII

17  Defendants and Axis did "not follow claims handling standards" and "refuse[d] to investigate and

18  refuse[d] to look for coverage for [plaintiffs'] claims."  *Id.* ¶ 61.  They allege they "communicated

19  with a woman named Erica" after these "coverage problems arose," but they do not say what they

20  or Erica said and did.  *See id.* ¶ 61.

21        In June 2019, plaintiffs filed this lawsuit in state court.  Compl., Notice of Removal Ex. 1,

22  ECF No. 1-1.  They sought payment of their insurance benefits and interest on those benefits, and

23  prayed for attorneys' fees, interest and punitive damages, but did not allege the amount of their

24  damages.  *Id.* ¶¶ 26, 35, 44, 48, 55, 56, 65.  The operative amended complaint, which also does

25  not allege an amount of damages, makes eight claims: 1) breach of contract against all

26  defendants; 2) breach of the implied covenant of good faith and fair dealing against Axis only;

27  3) reformation and breach of reformed contract against Axis only; 4) breach of the implied

28  covenant of good faith and fair dealing (reformed policy) against Axis only; 5) negligence against

2

all defendants; 6) fraud in the concealment against all defendants; 7) negligent misrepresentation against all defendants; and 8) fraudulent and unfair business practices under California's Unfair Competition Law ("UCL") against all defendants.  *See generally* FAC.

A little more than a year after the case was filed, plaintiffs' counsel did not appear at a hearing in state court, and that state court issued an order to show cause for failure to appear and failure to prosecute.  Order to Show Cause, Notice of Removal Ex. 3, ECF No. 1-3.  A few days later, plaintiffs served HPIH.  Not. Removal ¶ 9, ECF No. 1.  They did not serve Benefytt for several more months.  *See* Cheng Decl. ¶ 3, ECF No. 24-2.

A few months after HPIH appeared, it served interrogatories on the plaintiffs, which, among other things, asked them to state the amount of their damages.  *Id*. ¶ 5.  After an extension, plaintiffs served their answers, which included a response by Jaimi O'Brien estimating that her "hospital bills" were "approximately $58,000," that she paid "other health provider bills" of $730, and that she lost income of between $16,000 and $18,500.  *See* Notice of Removal ¶ 11; J. O'Brien Interrog. Resps. at 4, 8, Notice of Removal Ex. 10, ECF No. 1-10.  Defendants removed the case to this court ten days later, asserting diversity jurisdiction.  Notice of Removal ¶ 1.  Four motions are now fully briefed before the court, as follows:

- Plaintiffs' motion to remand, *see* Remand, ECF No. 10; Opp'n to Remand, ECF No. 24; Reply Remand, ECF No. 34.

- HPIH's motion to dismiss, *see* HPIH MTD, ECF No. 7; Opp'n to HPIH, ECF No. 12; HPIH Reply, ECF No. 31;

- Axis' motion to dismiss, Axis MTD, ECF No. 13, Opp'n to Axis, ECF No. 26; Axis Reply, ECF No. 33; and

- Benefytt's motion to dismiss, Benefytt MTD, ECF No. 15; Opp'n to Benefytt, ECF No. 27; Benefytt Reply, ECF No 32.

The court held a videoconference hearing on February 19, 2021.  Demian Oksenendler appeared for plaintiffs; Mitchell Popham, lead counsel on the motion for remand, and Jamie Mei Cheng, lead counsel on the motion to dismiss, appeared for HPIH and Benefytt.  Adya Baker, with Jacob Sommer observing, appeared for Axis.

1    **II.    MOTION TO REMAND**

2        **A.    Legal Standard**

3        A defendant may remove a matter to federal court if the district court would have original

4    jurisdiction.  28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  When,

5    as here, the asserted source of a district court's original jurisdiction is diversity of citizenship, the

6    parties must be completely diverse, and the amount in controversy must exceed $75,000.  *See*

7    28 U.S.C. § 1332.

8        Removal may occur within two thirty-day periods.  28 U.S.C. § 1446(b*); Kuxhausen v.*

9    *BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (2013).  "The first thirty-day removal period is

10   triggered 'if the case stated by the initial pleading is removable on its face.'  The second thirty-

11   day removal period is triggered if the initial pleading does not indicate that the case is removable,

12   and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from

13   which removability may first be ascertained."  *Carvalho LLC v. Equifax Info. Servs., LLC*,

14   629 F.3d 876, 885 (9th Cir. 2010) (quoting 28 U.S.C. § 1446(b) and *Harris v. Bankers Life &*

15   *Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005)).  A defendant may also remove an action "outside

16   the two thirty-day periods on the basis of its own information, provided that it has not run afoul of

17   either of the thirty-day deadlines."  *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125

18   (9th Cir. 2013) (permitting).  A case may not be removed on the basis of diversity jurisdiction

19   "more than 1 year after commencement of the action, unless the district court finds that the

20   plaintiff has acted in bad faith in order to prevent a defendant from removing the action."

21   28 U.S.C. §1446(c)(1).  "If the notice of removal was untimely, a plaintiff may move to remand

22   the case back to state court."  *Carvalho*, 629 F.3d at 885.

23       The party invoking the court's removal jurisdiction bears the burden of establishing "that

24   removal is proper."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  The Ninth Circuit

25   strictly construes the removal statute against removal jurisdiction.  *Id.*  "Where doubt regarding

26   the right to removal exists, a case should be remanded to state court."  *Matheson v. Progressive*

27   *Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (citation omitted).

1    **B.    Discussion**

2        The parties' complete diversity is undisputed, and it is undisputed that this action was

3    removed more than a year after it was filed in state court.  The court must therefore determine

4    (1) whether defendants removed this action within one of the two thirty-day periods described

5    above, (2) whether plaintiffs acted in bad faith to prevent removal, and (3) whether the defendants

6    have established the amount in controversy exceeds $75,000.

7        *First*, "notice of removability under § 1446(b) is determined through examination of the

8    four corners of the applicable pleadings, not through [the defendant's] subjective knowledge or a

9    duty to make further inquiry." *Harris v. Bankers Life & Cas. Co.,* 425 F.3d at 694.  This is a

10   "bright-line approach" meant to "bring[] certainty and predictability to the process." *Id*. at 697.

11   Under this approach "a defendant has no duty to investigate and to ascertain removability grounds

12   even if the complaint contains 'clues' to removability." *Calloway v. Affiliated Computer Servs.,*

13   *Inc.*, No. 2:13-01648, 2014 WL 791546, at *2 (E.D. Cal. Feb. 25, 2014); *see also Matter, Inc. v.*

14   *Bryant*, 441 F. Supp. 2d 1081,1090 (C.D. Cal. 2005) (noting that information supporting removal

15   must be "unequivocally clear and certain").  "[E]ven if a defendant could have discovered

16   grounds for removability through investigation, it does not lose the right to remove because it did

17   not conduct such an investigation." *Roth*, 720 F.3d at 1125.  Of course, a defendant may not

18   feign ignorance and delay removal to a strategically advantageous date.  *Id*.  But a plaintiff must

19   also not prevent or delay removal by artfully sparse pleading.  *Id*.

20       Here, plaintiffs did not allege any figures from which defendants could calculate the

21   amount in controversy.  Removability was unclear on the face of the pleadings.  The defendants

22   could thus rely on the "second thirty-day removal period," which is triggered by receipt of "'a

23   copy of an amended pleading, motion, order or other paper' from which removability may first be

24   ascertained." *Carvalho LLC*, 629 F.3d at 885 (quoting 28 U.S.C. §1446(b)).  Responses to

25   interrogatories qualify as "other paper" within the meaning of 28 U.S.C. § 1446(b). *Jordan v.*

26   *Nationstar Mortgage LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015).  Jaimi O'Brien's responses to

27   interrogatories showed for the first time that more than at least $77,230 was in controversy,

28   J. O'Brien Interrog. Resps. at 4, 5 & 8, and defendants removed ten days after receiving those

responses, Notice of Removal ¶ 1.  Removal was timely under the second thirty-day period.  *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (holding defendants not charged with notice of amount in controversy until they have "a paper that gives them enough information to remove").

   ***Second***, although diversity actions may not normally be removed more than a year after they are filed, that is not so if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. §1446(c)(1).  A plaintiff acts in bad faith by "fail[ing] to disclose the actual amount in controversy to prevent removal."  28 U.S.C. § 1446(c)(3)(B).  The Ninth Circuit has not set a standard for district courts to follow when evaluating allegations of bad faith, but district courts within the circuit generally have applied a high bar for defendants "to demonstrate that a plaintiff acted in bad faith to prevent removal."  *Kolova v. Allstate Ins. Co.*, 438 F. Supp. 3d 1192, 1196 (W.D. Wash. 2020) (quoting *Heacock v. Rolling Frito-Lay Sales, LP*, No. 16-0829, 2016 WL 4009849, at *3 (W.D. Wash. Jul. 27, 2016)) (internal quotation marks omitted).  These lower courts have found "bad faith when a plaintiff fail[s] to actively litigate a claim against a defendant in any capacity," *id*. (quoting *Heacock*, 2016 WL 4009849, at *3), and when "plaintiffs [have] failed to . . . serve [defendants'] within the one-year period of limitation" without any reasonable explanation.  *Heacock*, 2016 WL 4009849, at *3 (citing *Heller v. American States Ins. Co.*, Case No. 15-9771, 2016 WL 1170891, at *3 (C.D. Cal. Mar. 25, 2016)).

   The latter circumstance fits here.  Plaintiffs did not serve any defendant for at least a year after filing this action in state court, and did so soon after the court issued an order to show cause.  Plaintiffs have not explained their delays and do not contend they made any effort to serve defendants at all before the expiration of the one-year limitation.  The COVID-19 pandemic cannot have been the reason.  Closures and stay-home orders did not set in until almost eight months after plaintiffs filed their complaint.  *See* Opp'n to Remand at 4 (citing Request J. Not. Exs. 6–9).  Contact information for the defendants' agents was available online.  *See id.* (citing Request J. Not. Ex 2).  Plaintiffs' lack of effort without good explanation supports a finding of bad faith.  Defendants' removal was timely despite the one-year deadline of § 1446(c)(1).

1    *Third*, the defendants must show the amount in controversy exceeds $75,000.  The

2    amount in controversy is an "estimate of the total amount in dispute."  *Lewis v. Verizon*

3    *Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (citation omitted).  When the amount of

4    damages is unspecified, the removing party must show by a preponderance of the evidence that

5    the amount in controversy exceeds the jurisdictional threshold.  *Sanchez v. Monumental Life Ins.*

6    *Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  The district court considers the complaint, allegations in

7    the removal petition, and "summary-judgment-type evidence relevant to the amount in

8    controversy," *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citation omitted), as

9    well as evidence filed in opposition to the motion to remand, *Lenau v. Bank of Am., N.A.*, 131

10   F. Supp. 3d 1003, 1005 (E.D. Cal. 2015) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1

11   (9th Cir. 2002) (per curiam)).

12       Here, based on Jaimi O'Brien's interrogatory responses, at least $77,230 in economic

13   damages constitute the amount in controversy: $58,730 for hospital bills and a range of $16,000

14   to $18,500 for lost wages.  *See* Opp'n to Remand at 5–6 (conceding amount of bills).  Plaintiffs

15   also assert claims based on other injuries, such as harm to their credit and mental and emotional

16   distress.  *See* J. O'Brien Interrog. Resps. at 4–5, 8.  They also request punitive damages, interest

17   and their costs.  *See, e.g.*, FAC ¶¶ 36–37, 45, 49–51, 56–57, 66; *id.* at 21.  Defendants have thus

18   shown the amount in controversy exceeds $75,000 as required for removal.  *Campbell v. Hartford*

19   *Life Ins. Co.*, 825 F. Supp. 2d 1005, 1008–09 (E.D. Cal. 2011) (finding more than $75,000 in

20   controversy because plaintiff asserted claims for punitive damages and attorneys' fees in addition

21   to a compensatory damages claim worth $60,000).  The motion to remand is denied.

22   **III.    MOTIONS TO DISMISS**

23       **A.    Legal Standard**

24       A party may move to dismiss for "failure to state a claim upon which relief can be

25   granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a

26   "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

27   *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The court

28   assumes all factual allegations are true and construes "them in the light most favorable to the

7

1    nonmoving party." *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).

2    If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion

3    must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

4         A complaint need contain only a "short and plain statement of the claim showing that the

5    pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl.*

6    *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned

7    accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at

8    678.  In the same vein, conclusory or formulaic recitations elements do not alone suffice.  *Id*.

9    (quoting Twombly, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task

10   drawing on "judicial experience and common sense."  *Id*. at 679.

11        **B.    Discussion**

12             **1.    Fraud Claims (Claims 6 and 8)**

13        Defendants move to dismiss plaintiffs' claims for fraud in the concealment (claim 6) and

14   fraudulent and unfair business practices (claim 8).

15        "Under California law, the indispensable elements of a fraud claim include a false

16   representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."

17   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (citation omitted) (internal

18   quotation marks omitted).  Under Federal Civil Procedure Rule 9(b), "[i]n alleging fraud or

19   mistake, a party must state with particularity the circumstances constituting fraud or mistake."

20   Fed. R. Civ. P. 9(b).  "That is, the allegations must be sufficiently specific 'to give defendants

21   notice of the particular misconduct which is alleged to constitute the fraud . . . so that they can

22   defend against the charge and not just deny that they have done anything wrong.'"  *Alton v.*

23   *Medtronic, Inc.*, 970 F. Supp. 2d 1069, 1105 (D. Or. 2013) (quoting *Semegen v. Weidner*,

24   780 F.2d 727, 731 (9th Cir. 1985)).  Rule 9(b) generally requires the plaintiff identify "the who,

25   what, when, where, and how of the misconduct charged."  *Vess*, 317 F.3d at 1106 (internal

26   quotation marks and citation omitted).  This heightened pleading standard applies to fraud by

27   concealment claims, s*ee Hawkins v. Medtronic, Inc.*, 62 F. Supp. 3d 1144, 1155 (E.D. Cal. 2014),

28   /////

1   and claims alleging fraud under California's UCL, *Kearns v. Ford Motor Co*., 567 F.3d 1120,

2   1125 (9th Cir. 2009).

3         If a plaintiff asserts a fraud claim against multiple defendants, it must "identif[y] the role

4   of [each] defendant[] in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756,

5   765 (9th Cir. 2007) (citation omitted).  For that reason, to meet the demands of Rule 9(b), "when

6   defendants engage in different wrongful conduct, plaintiffs must likewise 'differentiate their

7   allegations . . . .' [I]t is not enough to 'lump' together the dissimilar defendants and assert that

8   'everyone did everything.'" *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667,

9   677 (9th Cir. 2018) (quoting *Swartz*, 476 F.3d  at 764–65).  But "a complaint need not distinguish

10   between defendants that had the exact same role in a fraud." *Id.*  "There is no flaw in a pleading

11   . . . where collective allegations are used to describe the actions of multiple defendants who are

12   alleged to have engaged in precisely the same conduct." *United States ex rel. Swoben v. United*

13   *Healthcare Ins. Co*., 848 F.3d 1166, 1184 (9th Cir. 2016).

14         Here, the operative complaint alleges without differentiation that all of the defendants

15   participated in the fraud.  It alleges all defendants are responsible for misrepresentations made by

16   "Julio, Erica, and others."  FAC ¶ 60.  But it relies on cookie-cutter legal conclusions rather than

17   factual allegations to support its claim that the defendants acted together:

18        • "Each defendant's actions and/or inactions as alleged herein were authorized,

19          ratified, approved, or directed by all of the other defendants." *Id.* ¶ 9.

20        • "[E]ach of the defendants was acting as the agent, servant, employee, alter-ego,

21          co-conspirator, partner, parent, subsidiary, coobligor, assignee, joint venturer,

22          and/or joint tortfeasor with each of the other defendants. Each defendant

23          authorized, ratified, approved, and/or planned the actions and/or lack of actions of

24          the other defendants. Each of the defendants is legally responsible for the acts of

25          all of the other defendants on a vicarious liability and/or *respondeat superior*

26          basis." *Id.* ¶ 10.

27        • "At various times in committing the wrongful conduct described herein, but not all

28          of those times, HII Defendants were acting as the agents of Axis Insurance

Company and/or as dual agents representing Axis Insurance Company and plaintiffs with regard to the acts and conduct alleged above." *Id.* ¶ 67.

- "As is common in the insurance industry, however, at least some of HII Defendants' wrongful conduct was done outside the scope of their agency for Axis Insurance Company, and on behalf of HII Defendants themselves and/or on behalf of Plaintiffs and/or as dual agents." *Id.* ¶ 67.

- "These representations were false and were made knowingly and/or recklessly, and/or without regard for the truth." *Id.* ¶ 61.

- "All of the misrepresentations and concealments and/or failures to disclose by defendants were made with the intent that plaintiffs be deceived and/or rely on them.'" *Id.* ¶ 62.

Such conclusory allegations do not state a claim of fraud.  They do not even give defendants notice of the basic facts plaintiffs intend to prove.  For example, they do not explain why it would be reasonable to infer that each of the defendants knew about the alleged fraud.  *See United States ex rel. Anita Silingo*, 904 F.3d at 679–80 ("[The] complaint . . . must set out sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be inferred.").  They do not permit a reasonable inference that Julio or Erica had authority to speak for each and every defendant.  *See Macris v. Bank of Am., N.A.*, No. 11-1986, 2012 WL 273120, at *11 (E.D. Cal. Jan. 30, 2012) (in fraud action, plaintiff must explain speaker's "authority to speak," among other things).  Nor do they explain what Erica said, let alone that she said anything false or misleading.

These shortcomings show the motions to dismiss must be granted.  Because the addition of factual allegations could permit a viable fraud claim, the court dismisses with leave to amend if possible within the confines of Rule 11.  *See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

### 2. Punitive Damage Claims

Plaintiffs seek punitive damages for their tort claims and for the breach of the implied covenant of good faith and affair dealing claim against Axis.  Defendants argue they cannot be held liable for punitive damages under California law.  Axis MTD at 7; HPIH MTD at 6; Benefytt MTD at 8.

A defendant may move to dismiss punitive damages claims under Rule 12(b)(6).  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).  California law provides that "[a] corporate employer may not be held liable for punitive damages arising from the acts of an employee unless 'an officer, director, or managing agent of the corporation . . . ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.'"  *Taylor v. Trees, Inc.*, 58 F. Supp. 3d 1092, 1105 (E.D. Cal. 2014) (quoting Cal. Civ. Code § 3294(b)).  "Managing agents are those corporate employees who exercise substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy."  *Id.* (quoting *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566–67 (1999) (internal quotations omitted)).  "A plaintiff must demonstrate that an alleged managing agent exercises 'substantial discretionary authority over significant aspects of a corporation's business.'"  *Id.* at 1106 (quoting *White*, 21 Cal. 4th at 577).  Wrongful conduct is ratified when, "under the particular circumstances, the employer demonstrates an intent to adopt or approve oppressive, fraudulent, or malicious behavior by an employee in the performance of his job duties."  *College Hosp. Inc. v. Superior Ct.*, 8 Cal.4th 704, 726 (1994).  "Corporate ratification in the punitive damages context requires actual knowledge of the conduct and its outrageous nature."  *Id.*

Here, the operative complaint includes only a conclusory statement that defendants "were authorized, ratified, approved, or directed by all of the other defendants."  FAC ¶ 9.  Plaintiffs allege no facts suggesting Julio and Erica were "managing agents" and include no other information in their pleadings that might suggest defendants ratified the allegedly fraudulent conduct.  The punitive damages claims are dismissed.

### 3. Breach of Contract Claim (Claim 1)

All defendants move to dismiss the contract claims against them and alternatively move for a more definite statement under Federal Rule of Civil Procedure 12(e).

The essential elements of a breach of contract claim are: (1) the existence of a valid contract, (2) plaintiff's performance of the contract or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff caused by defendant's breach. *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014) (citation omitted).   Federal Rule of Civil Procedure 12(e) permits a party to move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response."  "A motion for a more definite statement should not be granted unless the defendant cannot frame a responsive pleading." *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981).

Whether plaintiffs' contract claims are considered in light of Rule 12(b)(6) or Rule 12(e), the result is the same.  The complaint alleges vaguely that the HII Defendants entered contracts with both plaintiffs; that these contracts were "partially oral and partially written"; and that the terms of these contracts can be found in a scattered collection of unnamed "faxes, e-mails, memoranda, copies of insurance documents, and other writings and/or communications."  FAC ¶ 19; *see also id.* ¶ 23.  Plaintiffs allege Axis became a party to the partially written, partially oral contract through "various communications" and "various promises and consideration," *see id.* ¶ 23, and they seem to allege that the terms of this patchwork contract supersede or amend the terms of the written insurance policy, *see id.* ¶ 27.   And the complaint does not identify any of the insurance policy terms in any event.  These allegations give the defendants almost no information that could permit them to respond to the complaint or prepare a defense.  They permit no reasonable inference of the defendants' liability.

The contract claims are dismissed with leave to amend if amendment is possible within the confines of Rule 11.

### 4. Implied Covenant of Good Faith and Fair Dealing (Claim 2)

Axis moves for dismissal of plaintiffs' claim of breach of implied covenant of good faith and fair dealing.

"Under California law, . . . all contracts contain an implied covenant of good faith and fair dealing.  This covenant 'requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.'" *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co.*, 723 F.2d 700, 703 (9th Cir. 1984) (quoting *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979)).  "It is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Gardner v. Nationstar Mortg. LLC*, No. 2:14–1583, 2015 WL 1405539, at *6 (E.D. Cal. March 26, 2015) (citing *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 524 (2013)).  Thus, "where an implied covenant claim alleges a breach of obligations beyond the agreement's actual terms, it is invalid." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 326 (2000).  If the breach of the covenant of good faith allegations "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Bionghi v. Metro. Water Dist.*, 70 Cal. App. 4th 1358, 1370 (1999); *Guz*, 24 Cal.4th at 327.

All insurance contracts in California incorporate the implied covenant of good faith and fair dealing.  *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 575 (1973).  When benefits are due to an insured, "delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant[.]" *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995) (citation, internal quotation marks omitted).  To succeed on a bad faith claim, the insured must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause.  *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720–21 (2007).  Even where benefits are due under the policy, withholding them is not bad faith "if the insurer conduct[s] a 'thorough and fair' investigation, after which there remained a 'genuine dispute' as to coverage liability." *Bravo v. U.S. Life Ins. Co. in City of N.Y.*, 701 F. Supp. 2d 1145, 1159 (E.D. Cal. 2010) (citing *Wilson*, 42 Cal. 4th at 720, 723).

/////

13

Plaintiffs' claims for breach of the implied covenant stem from the refusal of Axis to pay benefits plaintiffs allege they were owed under the insurance policy and the alleged mishandling by Axis of the claims and investigation process.  FAC ¶ 34.  However, as the court noted above, plaintiffs have not provided any insurance policy terms.  And the complaint is devoid of any factual allegations that under the policy Axis specifically owed plaintiffs benefits, which it then withheld, and its reason for withholding benefits was unreasonable or without proper cause.  *See Wilson*, 42 Cal. 4th at 721.  This claim is dismissed with leave to amend if amendment is possible within the confines of Rule 11.

### 5.    Reformation (Claims 3 and 4)

Axis moves to dismiss both of plaintiffs' claims for reformation.  Under California law, if an agreement "does not truly express the intention of the parties," it may be revised or reformed if the agreement is the product of "fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected."  Cal. Civ. Code § 3399.  "Reformation of a contract for fraud may occur where one party fraudulently misrepresents to the other the meaning of the contract or that the contents of the written contract conform with the parties' intended agreement."  *Anaya v. Advisors Lending Grp.*, No. 09-1191, 2009 WL 2424037, at *6 (E.D. Cal. Aug. 5, 2009) (citing *National Auto. & Cas. Ins. Co. v. Industrial Acc. Comm'n*, 34 Cal.2d 20, 22–25 (1949).  Here, plaintiffs have not adequately alleged fraudulent conduct, misrepresentation or mistake on the part of Axis; accordingly, plaintiffs' reformation claims must fail.  *See Anaya*, 2009 WL 2424037, at *6.  The reformation claims are dismissed, with leave to amend if possible.

### 6.    Negligence and Negligence Misrepresentation (Claims 5 and 7)

Axis moves to dismiss the negligence and negligent misrepresentation claims.

"In negligence cases, respondeat superior liability is properly imposed when the tortfeasor was the 'servant' of the party against whom liability is sought."  *Krueger By & Through Krueger v. Mammoth Mountain Ski Area, Inc.*, 873 F.2d 222, 223 (9th Cir. 1989) "In some circumstances, an insurance agent may assume a special duty of care to an insured to provide accurate information regarding the terms or adequacy of a policy's coverage and may be held liable for negligence if that duty is breached."  *Hadley v. Prudential Ins. Co. of Am.*, No. 09-414, 2009 WL

14

1    10692152, at *2 (E.D. Cal. Apr. 1, 2009) (citing *Paper Savers, Inc. v. Nacsa*, 51 Cal. App. 4th

2    1090, 1097 (1996)).  "When an insurance agent breaches such a duty, the insurer can be held

3    vicariously liable for negligence if it directed, authorized, or ratified the agent's conduct."  *Id.*

4    (citing *Desai v. Farmers Ins. Exch.*, 47 Cal. App. 4th 1110, 1118, 1121 (1996)).

5           The elements of negligent misrepresentation include "(1) the misrepresentation of a past

6    or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent

7    to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the

8    misrepresentation, and (5) resulting damage."  *Apollo Capital Fund, LLC v. Roth Capital*

9    *Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) (citing *Shamsian v. Atl. Richfield Co.*,

10   107 Cal. App. 4th 967, 983 (2003)).  "A principal may be held liable for the negligent

11   misrepresentation of an agent."  *Hadley*, 2009 WL 10692152, at *2 (citing *Furla v. Jon Douglas*

12   *Co.*, 65 Cal. App. 4th 1069, 1078 (1998)).  Here, the complaint lacks any factual allegations that

13   Axis breached a duty of care it owed plaintiffs.  Rather, the complaint includes details of conduct

14   by HII defendants, which plaintiffs insist constitute negligence, FAC ¶¶ 51–56, and conclusory

15   statements that Axis "is liable for the injuries and damages caused by the negligence of HII

16   Defendants on a *respondeat superior* basis or other vicarious liability bases," *id.* ¶ 58.  Legal

17   conclusions that HII defendants were "[a]t various times . . . , but not all of [the] time[]. . . acting

18   as the agents of Axis" are not sufficient to state a negligence claim under a respondeat superior or

19   vicarious liability theory.  *See Desai*, 47 Cal. App. 4th at 1119.

20          Plaintiffs' negligent misrepresentation claim unravels for the same reason.  The operative

21   complaint does not properly allege such a claim against Axis, as there are no factual allegations

22   that Axis made any misrepresentations to the plaintiffs.  Plaintiffs only allege that Julio made

23   representations.  They have not adequately pled that Axis is a principle that can be held liable for

24   Julio's actions.  *See Hadley*, 2009 WL 10692152, at *2.

25          The court dismisses plaintiffs' negligence and negligent misrepresentation claims with

26   respect to Axis.  Plaintiffs may amend if possible within the confines of Rule 11.

27   /////

1          **7.      Unfair Competition Law (Claim 8)**

2          All defendants move to dismiss the claim of fraudulent and unfair business practices.  The

3   UCL prohibits any "unlawful, unfair or fraudulent business act."  Cal. Bus. & Prof. Code

4   § 17200.  At hearing, in response to the court's questioning, plaintiffs' counsel said the UCL

5   claim is brought under all three prongs of the UCL.  The claims cannot stand under the fraud

6   prong given the inadequacy of any fraud allegations, as discussed above.  *See Kearns*, 567 F.3d at

7   1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to

8   claims for violations of the CLRA and UCL.").  The court thus considers whether plaintiff states

9   a claim under the remaining prongs of the UCL.

10         When stating a claim under the "unlawful" business act prong, "section 17200 'borrows'

11  violations of other laws and treats them as unlawful practices. . . . Virtually any law—federal,

12  state or local—can serve as a predicate for a [UCL] action."  *Aleksick v. 7-Eleven, Inc.*, 205 Cal.

13  App. 4th 1176, 1185 (2012) (citation omitted).  "When a statutory claim fails, a derivative UCL

14  claim also fails."  *Id.*  To state a claim under this prong, a plaintiff "must allege facts sufficient to

15  establish that a statute was violated and who, specifically, acted in violation of the statute."

16  *Rupisan v. JP Morgan Chase Bank, NA*, No. 12-0327, 2012 WL 3764022, at *19 (E.D. Cal.

17  2012).  Mere "intonement of a statutory label . . . without any allegation of facts showing which

18  [d]efendant violated the act and how [is] insufficient to state a claim."  *Id.*  Although plaintiffs

19  allege violations of the California Insurance Code, the operative complaint is wanting in facts

20  showing which defendants violated the law and how.  *See* FAC ¶ 74.  Plaintiffs do not state a

21  claim under the unlawful prong.  The court thus turns to the "unfairness" prong.

22         "An unfair business practice is one 'that threatens an incipient violation of an antitrust

23  law, or violates the policy or spirit of one of those laws because its effects are comparable to or

24  the same as a violation of the law, or otherwise significantly threatens or harms competition.'"

25  *Massachusetts Cas. Ins. Co. v. Katz*, No. 12-4133, 2012 WL 12886215, at *6 (C.D. Cal. Oct. 17,

26  2012) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187

27  (1999)).  "To the extent [p]laintiffs intend or intended to assert a claim against [d]efendants based

28  on some [] unfair business practice, they must state such basis with enough specificity that the

16

1   opposing parties and the court can identify it as required by Rule 8 of the Federal Rules of Civil

2   Procedure." *Rupisan*, 2012 WL 3764022, at *18.  Here plaintiffs' complaint is lacking in factual

3   allegations identifying which unfair business practice each defendant engaged in specifically.

4     As plaintiffs do not meet the pleading standard for any prong of the UCL, the court

5   dismisses their claim, with leave to amend if possible.

6   **IV.   CONCLUSION**

7     The motion to remand is **denied**.  The motions to dismiss are **granted**.  The complaint is

8   **dismissed in part with leave to amend** as described in this order.  Any amended complaint must

9   be filed **within twenty-one days**.

10     This order resolves ECF No. 7, 10, 13 & 15.

11     IT IS SO ORDERED.

12   DATED:  March 18, 2021.

13

14

15       CHIEF UNITED STATES DISTRICT JUDGE

16